## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **WOJCIECH B.,**[1] | ) | |
| | ) | **No. 19 CV 362** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **ANDREW M. SAUL,** *Commissioner of* | ) | |
| *Social Security,* | ) | |
| | ) | **July 13, 2020** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Wojciech B. ("Wojciech") seeks disability insurance benefits ("DIB") based on his claim that he is disabled by degenerative disc disease, status post-surgery, and back pain. Before the court are the parties' cross motions for summary judgment. For the following reasons, Wojciech's motion is denied, and the government's is granted:

### Procedural History

Wojciech filed his DIB application in May 2013 alleging a disability onset date of November 14, 2011. (Administrative Record ("A.R.") 18, 167-73, 999.) After his application was denied initially and upon reconsideration, (id. at 67-75, 78-88, 104), Wojciech requested and was granted a hearing before an administrative law judge ("ALJ"), (id. at 105-07, 113-14). Wojciech appeared for the hearing in November 2015 along with his spouse, his attorney, a Polish language interpreter,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

and a vocational expert ("VE"). (Id. at 33-66.) The ALJ issued a decision in January 2016 finding that Wojciech is not disabled. (Id. at 18-28.) When the Appeals Council declined Wojciech's request for review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, *see Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Wojciech sought judicial review of the Commissioner's decision, and the district court remanded the case pursuant to an agreed order. (A.R. 986-89.)

On remand the Appeals Council directed the ALJ to "[g]ive further consideration to the treating source opinions of Dr. [Sean] Salehi, the [functional capacity evaluation ("FCE") completed by Occupational Therapist Paige] Shafer[,] and [a work hardening discharge summary prepared by Physical Therapist Brian] Fletcher."[2] (Id. at 993.) Following a second hearing in October 2018, at which Wojciech appeared along with his attorney, an interpreter, and a VE, (id. at 897-951), a different ALJ from the first hearing denied Wojciech's disability claim, (id. at 999-1017). Wojciech then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 9).

## Facts

Wojciech graduated from high school in Poland and received specialized training as a bricklayer. (A.R. 252, 909-10.) He last worked in November 2011,

---

[2] On July 23, 2013, Dr. Salehi referred Wojciech to a four-week work hardening program, which he started on July 31, 2013, but did not complete. (A.R. 992.) On April 12, 2013, Fletcher evaluated Wojciech to determine whether he could perform the physical demands of his job as a bricklayer and issued a work conditioning functional discharge report. (Id. at 727-29.) On August 28, 2013, Shafer performed the FCE, which Dr. Salehi adopted. (Id. at 718-26.)

when he sustained a work-related injury. (Id. at 252, 891.) His job required him to lift and carry building materials, weighing 100 pounds or more, up to 100 feet for at least a few hours a day. (Id. at 253.) He underwent surgery on his lumbar spine in January 2013 but still has radiating pain in his legs, numbness in his left leg, and difficulty walking, sitting, twisting, and bending. (Id. at 251, 389, 607.)

## A. Medical Evidence

The medical records Wojciech submitted to the ALJ show that he has been diagnosed with lumbar degenerative disc disease. (A.R. 389, 773-74, 619, 803.) A November 2011 MRI showed mild disc bulges at L1-2, L2-3, and L5-S1 with no focal disc herniation or spinal stenosis. (Id. at 619.) During an examination by Dr. Michael Zindrick in July 2012, Wojciech moved in a "markedly antalgic fashion" and reported "pain with flexion beyond 30 degrees [and] extension beyond 10 degrees." (Id. at 345.) Wojciech underwent another MRI in September 2012, which showed "[m]ild to moderate spondylotic changes throughout the lumbar spine" and a "[l]eft paracentral/proximal foraminal protrusion at L4-5 with associated annual tear." (Id. at 323.) The following month, in October 2012, Wojciech reported that facet joint injections improved his lower back pain. (Id. at 310-11.) Dr. Zindrick noted that Wojciech did "not appear to be in any acute distress" and that, despite pain with lumbar spine range of motion, he could toe and heel walk and had good strength and no leg swelling. (Id. at 311.) Dr. Zindrick recommended repeat lumbar facet injections and therapy, advancing to a work conditioning program when able. (Id.)

3

Dr. Salehi performed a lumbar decompression and fusion of Wojciech's L4-5 and L5-S1 levels in January 2013. (Id. at 414-16.) Six weeks after surgery, Wojciech's back pain had improved, but he still had pain radiating down his left leg. (Id. at 419.) Straight leg testing was negative, his gait was "a little slow but otherwise normal," and his motor strength was normal. (Id. at 420.) In May 2013 Dr. Salehi informed Wojciech that he could return to light work but that he should avoid repetitive bending or twisting. (Id. at 433.)

Wojciech was discharged from a work-conditioning program in August 2013. (Id. at 727-29.) The discharge summary, prepared by Fletcher, noted that Wojciech could not perform physical demands of his past work as a bricklayer but that he could lift up to 18 pounds, carry 25 pounds, and push or pull 40 pounds. (Id. at 727.) That same month, on examination by Dr. Salehi, Wojciech had tenderness in the lumbar spine and a reduced lumbar range of motion, but his straight leg raise testing was negative bilaterally and his gait was normal. (Id. at 775-77.) A week later Shafer conducted an FCE and determined that Wojciech could lift, carry, or push up to 25 pounds and occasionally climb. (Id. at 719-20.) Shafer determined that Wojciech should avoid bending and only occasionally squat and kneel. (Id. at 720.) She also found inconsistencies in the testing of Wojciech's grip strength. (Id. at 725.)

A September 2013 lumbar spine MRI showed "[l]eft-sided neural foraminal narrowing at L4-5 and L5-S1" caused by fluid collection and degenerative changes in the rest of the lumbar spine. (Id. at 794-95.) In November 2013 Wojciech

4

reported back pain but had full range of motion in his extremities and no edema. (Id. at 770.) Wojciech had tenderness and reduced range of motion in his lumbar spine in January 2014, but his gait and sensation in the extremities were normal. (Id. at 773; see also id. at 885-87.) An MRI completed in May 2015 showed fluid collection at L4-5 and L5-S1 and mild disc bulges with annular fissures at L1 through L4 with no stenosis or narrowing. (Id. at 836-37.) An August 2015 exam revealed normal curvature, no back tenderness with full range of motion, and no edema. (Id. at 827-28.)

In October 2015 Dr. Salehi examined Wojciech and "reassured [him] that his imaging does not show any significant pathology [or] neural compression." (Id. at 884.) He found no tenderness in the lumbar spine, no spasms, slightly reduced strength in Wojciech's left leg, a little slow but otherwise normal gait, reduced range of motion in the lumbar spine, and normal reflexes. (Id. at 882-84; see also id. at 894-95.) But he did recommend spinal cord stimulation. (Id. at 884.) In January 2016 Wojciech was not in acute distress, had full range of motion in his extremities, no edema, and no neurological abnormalities. (Id. at 1195-97.) In June 2016 Wojciech reported lower back pain and numbness in his legs. (Id. at 1487.) An examination revealed lumbar pain with range of motion testing and mild paraspinal muscle spasms. (Id. at 1487-88.) Straight leg testing was negative bilaterally and Wojciech had no difficulty heel or toe walking and showed normal gait and motor strength. (Id.; see also id. at 1493-94.)

Wojciech has received chiropractic spinal manipulation and ultra-sound therapy, (id. at 620-24), physical therapy, (id. at 314, 541-607, 838-81), injections, (id. at 314, 340-43, 893, 1499, 1506, 1510, 1518, 1520, 1530, 1532, 1534, 1536, 1538, 1540, 1542), and pain medication and management, (id. at 315-16, 351-52, 424, 770, 787-816, 828, 1197). Nonetheless, Wojciech has continued to report pain and numbness and tingling in his left leg. (Id. at 352, 419, 624.)

## B.   Hearing Testimony

Wojciech testified at the second hearing that he came to the United States in 1993 and worked as a bricklayer until he was injured in 2011. (A.R. 909-10, 923.) He lives with his wife and his adult son and daughter. (Id. at 912.) They help him as needed, including by helping him to get out of bed and driving him places. (Id. at 920, 926-27.)

Wojciech said the back pain sometimes radiates down his leg when he sits. (Id. at 914.) He also experiences pain when he sits or stands for a long period of time and when he bends or twists. (Id. at 914, 916, 920.) He has good days and bad days. (Id. at 914-15.) On good days, his pain is a 1 or 2/10 on a pain scale, and he can water flowers, cook breakfast, and maintain a seated position for 10 to 20 minutes. (Id. at 914-15, 920.) On bad days, which he generally experiences one to three times a week, his pain is an 8 or 9/10 on a pain scale and he has to take pain medication and stay in bed. (Id. at 914-15.) Although he had back surgery, the "stronger pain" recurred about a year afterwards. (Id. at 923.)

Wojciech sees a pain management physician who has treated him with injections, physical therapy, and medications, including Gabapentin, Norco, and ibuprofen. (Id. at 917-18, 924.) He said that injections are helpful but only for a limited period. (Id. at 917-18.) He experiences drowsiness when he takes medications, and when his pain is higher than a 2/10 on a pain scale, he has difficulty maintaining his concentration and focusing. (Id. at 918-19, 923.) He also sees a psychiatrist for his depression and experiences headaches several times each week, which last from several hours to half a day. (Id. at 919, 921.)

In terms of his daily activities, he sometimes drives, but only for about five to ten minutes. (Id. at 914.) He handles his own personal hygiene and cares for his pets, including by walking his dog about half a block daily. (Id. at 920, 927.) He also grocery shops with his wife once a week if the pain is not severe. (Id.)

## C.    The ALJ's Decision

On remand the ALJ followed the required five-step process in evaluating Wojciech's disability claims. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that Wojciech had not engaged in substantial gainful activity from November 14, 2011, through December 31, 2016, his date last insured. (A.R. 1002.) At step two the ALJ concluded that Wojciech has the severe impairment of degenerative disc disease of the lumbar spine, status post-surgery, and the medically determinable mental impairment of depression. (Id.) At step three the ALJ determined that Wojciech's impairments do not meet or medically equal any listed impairment. (Id. at 1003-04.) Before turning to step four, the ALJ assessed

Wojciech as having a residual functional capacity ("RFC") to perform light work with the following limitations: he can occasionally climb, stoop, kneel, crouch, and crawl; he cannot have concentrated exposure to extreme cold, humidity, or vibrations; he must be able to change positions between sitting and standing every hour for one to two minutes; he can only perform work involving simple, routine tasks; and he can frequently interact with coworkers and supervisors. (Id. at 1004.) At step four the ALJ found that Wojciech is unable to perform his past relevant work, but at step five she determined that he can perform other jobs that exist in significant numbers in the national economy. (Id. at 1016.)

## Analysis

Wojciech asserts that the ALJ erred by: (1) failing to support her symptom assessment with substantial evidence; (2) incorrectly weighing the medical opinion evidence; (3) improperly assessing his RFC; and (4) finding at step five that jobs identified by the VE would be available to Wojciech. (R. 16, Pl.'s Mem. at 5-16.) This court reviews the ALJ's decision to ensure that it is supported by substantial evidence, meaning "more than a mere scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must "build a logical bridge from the evidence to his conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712

F.3d 351, 362 (7th Cir. 2013); *Simons v. Saul*, ___ Fed. Appx. ___, 2020 WL 3124238, at *2 (7th Cir. June 12, 2020) ("[W]e may not usurp the ALJ's judgment by reevaluating evidence or making our own credibility determinations.").  That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required.  *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## A.    Symptom Assessment

The court begins its analysis with Wojciech's challenge to the ALJ's assessment of his statements regarding his symptoms, because that assessment informs several aspects of the ALJ's decision, including the RFC analysis. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (noting that an erroneous credibility determination requires remand unless the remainder of the ALJ's decision does not depend on it).  Wojciech contends that the ALJ improperly evaluated his symptom allegations.  (R. 16, Pl.'s Mem. at 14-16.)  An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe first-hand the believability of the claimant's symptom descriptions.  *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014).  As such, a reviewing court may only reverse a symptom assessment where it is "patently wrong."  *Id.* at 816.  The ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence."  *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).  SSR 16-3p requires the ALJ to consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in

9

assessing the severity of the claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

As an initial matter, Wojciech argues that the ALJ used an "impermissibly high standard" in finding that Wojciech's statements regarding the severity of his symptoms were "less than fully consistent with the evidence." (R. 16, Pl.'s Mem. at 13 (citing A.R. 1014).) Instead, according to Wojciech, the standard must be whether his statements are "reasonably consistent" under a preponderance of the evidence standard. (Id. (citing 20 C.F.R. §§ 404.953, 416.1453(a)).) The government is correct that this court—and the other courts in the circuit—have declared "not entirely consistent" boilerplate language to be meaningless but found such language to be harmless so long as substantial evidence supports the ALJ's symptom assessment. (R. 22, Govt.'s Mem. at 6 (citing *Donald L. v. Saul*, No. 18 CV 5734, 2019 WL 3318165, at *6 (N.D. Ill. July 24, 2019)).)

Here the court finds that, despite the problematic language, the ALJ considered the applicable factors in assessing the severity of Wojciech's symptoms and made specific findings to support her decision. The ALJ considered Wojciech's allegations, (A.R. 1004), his wife's allegations, (id. at 1015), objective medical evidence, (id. at 1005-11), his medication and side effects, (id. at 1004-10), opinion evidence, (id. at 1005, 1007-15), his daily activities, (id. at 1015), and pain factors, (id. at 1005-11). *See* SSR 16-3p, 2017 WL 5180304 at *7-8. Based on her review of

the evidence and testimony, the ALJ determined that Wojciech was able to perform light work with limitations. (A.R. 1004.)

In so deciding, the ALJ relied in part on objective evidence demonstrating that Wojciech's back impairment and related pain, while "severe," were not as restrictive as he alleged. (Id. at 1002-17.) For example, the ALJ cited an MRI showing: mild degenerative disc disease of the lumbar spine with mild facet arthritis; mild disc bulging at L1-L2, L2-L3, and L5-S1; and no focal disc herniation or spinal stenosis. (Id. at 1005 (citing id. at 619); see also id. at 1010 (citing id. at 836-37).) The ALJ also considered records showing that Wojciech: "does not appear to be in any acute distress"; had motor strength of 5/5 in his lower extremities; denied weakness and was able to ambulate; and had normal neurological exams and normal gait. (Id. at 1005-11 (citing id. at 352, 419-21, 773, 776-77, 895).)

Wojciech contends that, although the ALJ acknowledged his back pain and reduced range of motion in the lumbar spine, she "failed to discuss the full breadth of the cited records" showing pain, slow position transitions, recommendations for injections, and a slow gait. (R. 16, Pl.'s Mem. at 15.) Contrary to Wojciech's assertion, the ALJ discussed records showing slow transitions, heel and toe walking with discomfort, moving in "a markedly antalgic fashion," and straight leg testing positive for pain. (A.R. 1005-06 (citing id. at 315, 345, 352, 884).) Additionally, the ALJ determined that Wojciech had a "severe" back impairment and noted that he rated his back pain at an 8 or 9/10 on a pain scale on a bad day. (Id. at 1002, 1004.) The ALJ cited medical records showing his consistent reports of back pain and

numbness in his left leg. (Id. at 1005 (citing id. at 310-11, 345, 350, 352, 362, 419, 624).) She also addressed injections and other treatment he received, including physical therapy. (Id. (citing, e.g., id. at 314, 340-43, 352, 360, 620-24).) Thus, Wojciech's claim that the ALJ cherry picked evidence to support her decision, while ignoring conflicting evidence, is not well-founded.

Wojciech also complains that the ALJ cited the same evidence to support her symptom assessment that she cited when evaluating the reviewing physicians' opinions. (R. 16, Pl.'s Mem. at 15.) That evidence showed "unassisted walking, normal motor strength in the lower extremities, and a normal range of motion in the extremities." (Id.) The government responds that Wojciech's argument boils down to a request for this court to reweigh the evidence of record. (R. 22, Govt.'s Mem. at 7.) It is true that the court cannot reweigh evidence or make its own credibility determination. *See Simons*, 2020 WL 3124238, at *2. Regardless, the ALJ's decision shows that she conducted a thorough review of evidence and had a sound basis for her symptom assessment. (A.R. 1004-15.)

Finally, Wojciech challenges the ALJ's reliance on his daily activities, including his ability to drive, shop for 30-60 minutes per week, and perform minor home repairs, to undermine Wojciech's allegations that he cannot sit or stand for prolonged periods of time. (R. 16, Pl.'s Mem. at 16.) The ALJ was not permitted to place "undue weight" on Wojciech's activities to assess his ability to sustain competitive work. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). But the ALJ did not equate his activities with an ability to work here. (A.R. 1015 (recognizing

that Wojciech's activities were not "conclusive proof" that he can sustain full-time work and stating that "such activities are one factor to be considered" in a symptom assessment).) Instead, the ALJ considered daily activities to assess the intensity and limiting effects of Wojciech's subjective symptoms. The ALJ adequately supported her symptom assessment with specific findings and evidence of record.

## B.    Opinion Evidence

On remand the Appeals Council directed the ALJ to "[g]ive further consideration . . . and explain the weight given to" the opinions of treating neurosurgeon Dr. Salehi, the FCE completed by Shafer, and the work hardening discharge report prepared by Fletcher. (A.R. 992-93, 999.) Wojciech asserts that the ALJ erred by improperly evaluating the opinion evidence on remand. (R. 16, Pl.'s Mem. at 7-13.) He first claims the ALJ placed insufficient weight on Shafer's and Physical Therapist Cheryl Donahue's ("Donahue") opinions. (Id. at 6-7.) The ALJ assigned partial and little weight to Shafer's and Donahue's opinions, respectively. (A.R. 1011-12.) The ALJ discounted their opinions in part because, according to her, physical therapists are not "acceptable medical source[s]" for disability purposes. (Id. at 1011-13.)

Wojciech argues that the reason provided by the ALJ is not valid because social security regulations permit non-medical sources to be considered in determining a claimant's ability to work. (R. 16, Pl.'s Mem. at 7 (citing 20 C.F.R. § 404.1527(f)(1)).) The government responds that physical therapists are non-acceptable medical sources and may be afforded less weight than physicians'

opinions. (R. 22, Govt.'s Mem. at 3-4 (citing 20 C.F.R. § 404.1513).) While a physical therapist's report "cannot be given the controlling weight of a treating physician's opinion, [it] is entitled to consideration and cannot be arbitrarily rejected." *Hamilton v. Colvin*, 525 Fed. Appx. 433, 439 (7th Cir. 2013). An ALJ must consider these reports because "physical therapists tend to be consulted for chronic problems" and have "significant experience" assessing an individual's ability to work. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

Although the ALJ discussed the physical therapists' status as non-acceptable medical sources, she did not base her evaluation of their opinions solely on that factor. Rather, the ALJ considered the substance of each opinion and explained why the opinions of Wojciech's treating specialists and the state agency medical consultants warranted greater weight. (A.R. 1011-13.) With respect to Donahue, the ALJ explained that she assigned the opinion little weight because it was submitted before Wojciech had his fusion surgery in January 2013 and did not include postural limitations based on Wojciech's reduced lumbar range of motion. (Id. at 1012.) Earlier in her decision, the ALJ also observed that during testing, Donahue noted "several issues with the claimant's efforts." (Id. at 1005 (citing id. at 503-39).) As to Shafer, the ALJ explained that she afforded the opinion partial weight because it was inconsistent with Shafer's own FCE report and other evidence of record. (Id. at 1012-13.) For example, Shafer determined that Wojciech had limited ability to reach, push, and grasp, despite evidence showing inconsistencies in his grip strength during testing and consistent reports of normal

14

range of motion and normal motor strength in his upper extremities. (Id.) Shafer also found that Wojciech could only occasionally sit, stand, and walk, even though she determined he was capable of "light-medium work." (Id.; see also id. at 718-26.) Wojciech argues that other parts from the FCE support Shafer's opinion, (R. 16, Pl.'s Mem. at 8), but the court may not reweigh evidence on appeal.

Wojciech next challenges the ALJ's evaluation of Dr. Salehi's opinion based on the FCE Shafer completed. (R. 16, Pl.'s Mem. at 10.) Under the treating physician rule an ALJ must give controlling weight to a treating physician's opinion if it is: "(1) supported by medical findings; and (2) consistent with substantial evidence in the record."[3] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). If the ALJ concludes that a treating physician's opinion is not entitled to controlling weight, she must give "good reasons" for discounting the opinion, after considering factors such as the nature of the treatment relationship, the frequency of examination, the physician's specialty, the type of tests performed, and the reliability of the opinion. *See* 20 C.F.R. § 416.927(c); *see also Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

Dr. Salehi offered several opinions after he performed lumbar spine surgery on Wojciech in January 2013. (A.R. 419-26, 428-33, 772-74, 885-87, 1007.) In his May 2013 opinion, Dr. Salehi advised that Wojciech can perform light work,

---

[3] The Social Security Administration adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 58844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. (Id.)

provided that he does not frequently bend or twist. (R. 22, Govt.'s Mem. at 3; see also A.R. 431-33.) Dr. Salehi then referred Wojciech to Shafer for an FCE. (Id. at 718.) After the August 2013 FCE report issued, Dr. Salehi opined that Wojciech was limited as determined in the FCE. (Id. at 772-74, 1013.) The ALJ gave more weight to Dr. Salehi's first opinion than to the second opinion he rendered after the FCE. (Id. at 1013-14.)

In evaluating Dr. Salehi's opinions, the ALJ considered applicable regulatory factors, noting that Dr. Salehi specializes in orthopedics and treated Wojciech for several years before the date late insured, December 31, 2016. (Id. at 1007-10, 1013); see also 20 C.F.R. § 416.927(c). As to Dr. Salehi's opinion based on the FCE, the ALJ explained that the test underlying that opinion was a "one-time exam" Shafer performed. (A.R. 1013-14.) The ALJ noted that the FCE had "internal inconsisten[cies]" with respect to hand limitations and grip strength. (Id. at 1013 (citing id. at 725.) The ALJ further noted inconsistencies between the FCE and other record evidence, which showed that despite reduced range of motion in the lumbar spine and back pain, Wojciech "ambulated without assistance, [and] had normal to slightly reduced motor strength in his lower extremities and normal neurological functioning as late as November 2016." (Id. (citing id. at 311 (finding on examination that Wojciech was not in "any acute distress" and recommending continued physical therapy and advancing to a work conditioning program), 420 (finding strength in lower extremities to be "normal with encouragement"), 825 (finding "[n]ormal strength, bulk and tone in muscles of extremities"), 827 (noting

16

"[n]ormal curvature, no tenderness" in back), 884 (showing that imaging of the lumbar spine showed no significant pathology or neural compression)); see also id. at 1004-11.) Because of these cited inconsistencies in the record, the ALJ was permitted to give Dr. Salehi's revised opinion after the FCE "less weight." *See Rainey v. Berryhill*, 731 Fed. Appx. 519, 523 (7th Cir. 2018) (citation omitted).

The ALJ also relied on the opinions of treating physician Dr. Zindrick and state agency reviewing physicians Drs. James Madison and Phillip Galle in discounting Dr. Salehi's opinion based on the FCE. Dr. Zindrick and the reviewing physicians opined that Wojciech was capable of performing light work, (A.R. 73, 86, 1014), just as Dr. Salehi found in his May 2013 opinion, (id. at 431-22). As the government points out, only Dr. Salehi's opinion based on the FCE was an outlier. (R. 22, Govt.'s Resp. at 3; see also A.R. 1014.) Wojciech argues that the ALJ erred in affording significant weight to Dr. Zindrick's opinion because he did not treat Wojciech after 2012. (R. 16, Pl.'s Mem. at 11.) But according to the ALJ his opinion was consistent with subsequent exams. (A.R. 1013 (citing records showing Wojciech's "gait was unassisted, his motor strength was normal and the imaging showed no neural compression in his lumbar spine").)

Wojciech contends that the ALJ improperly assigned significant weight to the reviewing physicians because their opinions alone do not justify discounting Dr. Salehi's opinion based on the FCE. (R. 16, Pl.'s Mem. at 11-12.) It is true that "[a]n ALJ can reject an examining physician's opinion for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining

physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). But as explained above, the ALJ did not rely on the reviewing physicians' opinions alone to discount Dr. Salehi's opinion based on the FCE. The ALJ supported her evaluation with substantial evidence.

In any event, the ALJ was permitted to rely on the reviewing physicians' opinions because the ALJ determined that they were consistent with subsequent exams. *See Massaglia v. Saul*, 805 Fed. Appx. 406, 410 (7th Cir. 2020) (finding that ALJ may rely on reviewing physician's opinion, provided that later evidence does not "change[] the picture so much that it reasonably could have changed" the opinion). Wojciech argues that the August 2013 FCE documents significant changes that the reviewing physicians did not consider. (R. 23, Pl.'s Reply at 3.) But Dr. Galle reviewed the record after the FCE was performed. (A.R. 78-88.) Dr. Madison reviewed the record in July 2013, shortly before the FCE was performed. (Id. at 75.) Regardless, the ALJ determined that the physicians' opinions were consistent with clinical exams in the record. (Id. at 1014.) The ALJ thus was not precluded from relying on the reviewing physicians' opinions.

Finally, Wojciech argues that the ALJ improperly rejected the FCE's finding that he cannot stoop, which Dr. Salehi incorporated into his opinion. (R. 16, Pl.'s Mem. at 10-11 (citing A.R. 774, 887).) The FCE indicated that Wojciech's lumbar range of motion was limited to 15 degrees. (A.R. 721.) Wojciech contends that pursuant to the Occupational Information Network ("O*Net"), the jobs identified by the VE and relied upon by the ALJ would have been ruled out because they require

some degree of stooping. (R. 16, Pl.'s Mem. at 10-11.) As explained above, the ALJ rejected the FCE as a "one-time exam" that had internal inconsistencies as well as inconsistencies with the record as a whole. (A.R. 1012-14.) The ALJ also discounted Dr. Salehi's opinion based on the FCE. (Id. at 1013-14.)

The government points out that two of the three identified positions—small products assembler and electronics worker—do not require any stooping, according to the Dictionary of Occupational Titles ("DOT"). (R. 22, Govt.'s Mem. at 4.) The Social Security Administration has taken judicial notice only of the DOT, not the O*Net. (Id.) Even if O*Net were applied here, the government disagrees with Wojciech's interpretation of O*Net listings as requiring significant stooping. (Id.) The court need not wade deeply into interpreting the O*Net listings here because the ALJ did not find Wojciech incapable of all stooping. (A.R. 1004.) Rather, she determined that he could stoop occasionally.[4] (Id. at 1004-15.) Accordingly, the court finds no reversible error in the ALJ's evaluation of the opinion evidence.

## C. RFC Assessment

Wojciech argues that the ALJ erred in assessing his RFC by limiting him to changing positions between sitting and standing every hour. (R. 16, Pl.'s Mem. at 13.) "An ALJ adequately supports [her] RFC determination when [she] consider[s] all limitations supported by [the] record evidence and tie[s] the record evidence to

---

[4] Social security regulations define "occasionally" in terms of stooping as "very little up to one-third of the time." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (1996) ("A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.").

the limitations including in the RFC finding." *Vang v. Saul*, 805 Fed. Appx. 398, 402 (7th Cir. 2020) (citation and quotations omitted). Wojciech contends that the ALJ failed to provide any explanation for limiting him to switching positions every hour. (R. 16, Pl.'s Mem. at 13.) He says he needs to alternate positions more frequently. (Id.) For support he points to a function report completed by his wife stating that he needs to change positions every 15 to 20 minutes. (Id. (citing A.R. 263).) He also cites a July 2014 record showing that he reported needing to switch positions after only 10 minutes. (Id. (citing A.R. 810).)

The government responds that the ALJ's RFC assessment is consistent with Wojciech's own testimony that he cannot sit or stand for extended periods. (R. 22, Govt.'s Mem. at 5; see also R. 16, Pl.'s Mem. at 13.) At the second administrative hearing, Wojciech testified that he cannot sit or stand for "longer" periods of time. (A.R. 916; see also id. at 362 (reporting numbness and tingling with "prolonged seated activity and driving").) When asked to quantify "a longer period," Wojciech answered "sometimes even 15 minutes, sometimes 25 minutes." (Id. at 916.) The ALJ credited Wojciech's allegations of pain in finding him limited to alternating between sitting and standing every hour but declined to limit him further given the evidence of record as a whole. (Id. at 1014-15.)

Here the court concludes that the ALJ reasonably assessed Wojciech's RFC. The ALJ considered Wojciech's testimony that he cannot sit or stand for extended periods because of his back pain. (Id. at 1014.) The ALJ also considered his wife's function report. (Id. at 1015.) Despite the symptom allegations, the ALJ

determined that medical evidence of record showed that Wojciech was not as limited as suggested. (Id.) The ALJ supported her decision with substantial evidence, as explained above. (Id. at 1014-15.) The court thus concludes that the ALJ appropriately considered a limitation permitting Wojciech to switch positions and tied the record evidence to her RFC assessment. *See Vang*, 805 Fed. Appx. at 402.

In any event, the government points out that the VE gave an individual with Wojciech's RFC "greater latitude" than the ALJ did, testifying that the identified jobs would permit Wojciech to alternate positions every 30 minutes. (R. 22, Govt.'s Mem. at 5 (citing A.R. 936).) Thus, even though the ALJ limited Wojciech to switching positions every hour, the jobs identified by the VE would allow him to change from sitting to standing every 30 minutes, not far out of range of the duration Wojciech said he could sit or stand. (A.R. 916.)

## D.    Step-Five Determination

Wojciech argues that the ALJ erred at step five by relying on VE testimony that sufficient work would be available to a hypothetical person with the RFC the ALJ assigned to him. (R. 16, Pl.'s Mem. at 5-7.) At step five an ALJ must ensure that substantial evidence supports the VE's testimony that "suitable jobs exist in significant numbers." *Chavez v. Berryhill*, 895 F.3d 962, 963 (7th Cir. 2018). Here the VE testified that a hypothetical worker of Wojciech's age and capacity for light work with limitations[5] could not perform past work as a bricklayer but that there

---

[5]    The hypothetical to the VE included the following limitations: occasional climbing, stooping, kneeling, crouching, and crawling; no concentrated exposure to extreme cold, humidity, or vibrations; simple, routine tasks; and frequent

are other jobs he could perform, including small parts assembler (196,500 jobs), electronics worker (29,900 jobs), and hand packager (315,200 jobs). (A.R. 932.) When the VE considered the additional limitation that the individual would need to change positions every hour for a minute or two, she testified that the same jobs would apply but that the numbers would be reduced by 75%. (Id. at 934, 936-37.) Relying on the VE's testimony, the ALJ found that 25% of identified jobs would be available, translating into 49,125 small products assembly jobs, 7,475 electronics worker jobs, and 78,800 hand packager jobs. (Id. at 1017; see also id. at 932-34.) The ALJ thus determined that sufficient jobs existed that Wojciech could perform. (Id. at 1016-17.)

Wojciech argues that the ALJ failed to establish that sufficient numbers of the remaining jobs would be available to him. (R. 16, Pl.'s Mem. at 5-6.) In response to questioning from Wojciech's attorney during the hearing, the VE answered that the identified jobs could be performed with a stool or chair, but it "would depend on the employer" as to whether a stool or chair would be provided. (A.R. 939-40.) Wojciech acknowledges that "[a]n ALJ's step 5 determination does not consider whether accommodations would be required for the claimant to perform the available jobs." (R. 16, Pl.'s Mem. at 6 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999).) But Wojciech argues that, in this case, the VE's testimony "did not provide an evidentiary basis" for the ALJ to find that

---

interaction with coworkers and supervisors and occasional interaction with the public. (A.R. 932-33.)

sufficient jobs existed. (R. 16, Pl.'s Mem. at 6.) At the very least, the VE should have provided "a percentage of employers that would provide the accommodation" of a chair or a stool, according to Wojciech. (Id.)

As an initial matter, Wojciech mischaracterizes the VE's testimony. The VE did not testify that the identified jobs would be available only if an employer provided a chair or stool on which to sit. (A.R. 940, 1004.) Rather, the VE said in response to questioning by Wojciech's attorney that the identified jobs "could be performed with a stool or chair." (Id. at 939-40.) Earlier the VE made clear that, based on how the identified jobs are actually performed in the competitive market, 25% of the jobs would be available, even if the hypothetical worker were limited to changing from sitting to standing every 30 minutes.[6] (Id. at 1017; see also id. at 932-34, 936.) The VE did not condition the availability of such jobs on the hypothetical worker being provided a chair or stool. (Id. at 932-34, 936.)

Furthermore, it would have been inappropriate for the VE to inject, or the ALJ to consider, assumptions about employer accommodations into testimony or the decision. *Cleveland*, 526 U.S. at 803; *see also Eaglebarger v. Astrue*, No. 11 CV 38, 2012 WL 602022, at *5 (N.D. Ind. Feb. 23, 2012). But neither did so here. In *Cleveland* the Supreme Court found that while an ADA claim may "comfortably exist side by side" a social security claim, whether a claimant is entitled to a "'reasonable accommodation'" is not an appropriate consideration in the social security context. 526 U.S. at 803. With "limited" resources the Social Security

---

[6] In so testifying, the VE relied on her own observation, training, education, knowledge, and the Occupational Employment Quarterly. (A.R. 934-35.)

Administration simply is not equipped to conduct a reasonable accommodation analysis turning on "highly disputed workplace-specific matters." *Id.* Accordingly, in this case the government was not required to establish the percentage of employers that would accommodate an option to sit by offering a chair or stool. *Id.*

The key inquiry for the court at step five is whether substantial evidence supports the VE's testimony that suitable jobs exist in significant numbers. *See Chavez*, 895 F.3d at 963. Here the court finds that it does. The VE testified that for a hypothetical worker with Wojciech's RFC, 25% of identified jobs would be available. (A.R. 1017; see also id. at 932-34, 936.) The ALJ was entitled to rely on such testimony in finding that jobs existed in significant numbers in the national economy that Wojciech could perform. (Id.)

## Conclusion

For the foregoing reasons, Wojciech's motion for summary judgment is denied and the government's motion is granted.

ENTER:

_Young B. Li_

**Young B. Kim**
**United States Magistrate Judge**

24